**Barr Research, Inc.**

ORIGINAL

One Bala Plaza • Suite 324 • Bala Cynwyd, PA 19004-1401 • 610/668-2989

11 March 2004

Daniel Shames, M.D., Director
Division of Administration
Division of Reproductive and Urologic Drug Products
Center for Drug Evaluation and Research
Food and Drug Administration
5600 Fishers Lane
Rockville, MD 20857

RECEIVED

MAR 1 2 2004

FDR/CDER

M

NDA 21-045
Plan B® (levonorgestrel) tablets, 0.75 mg as Emergency Contraception
Amendment to a Pending Application/Supplement 011

NDA SUPPL AMENDMENT

Dear Dr. Shames:

Reference is made to NDA 21-045 for Plan B® (levonorgestrel) tablets, 0.75mg; to Supplement 011, submitted 21 April 2003 proposing the Rx-to-OTC switch for Plan B; and to the 17 February 2004 teleconference between FDA and representatives from Barr Research ("Barr").

Although Barr believes and maintains that Plan B is safe and effective for true OTC use and should be approved as such, we understand that FDA is concerned about adolescent use. Therefore, Barr is willing to consider circumstances in which Plan B would be approved for OTC use by women age sixteen and older, while maintaining prescription status for women under age sixteen.

The elements of this proposal are as follows:

1. Plan B would be approved by FDA as an OTC product with a restriction that women under age sixteen require a prescription;

2. There would be only one package with label and labeling for both OTC and prescription users of the product;

3. The product would be distributed only to customers with a pharmacy license or a valid wholesale license.

**Background**

Plan B was approved on 28 July 1999 for prescription use. It is indicated as an emergency contraceptive that can be used to prevent pregnancy following unprotected intercourse or a known or suspected contraceptive failure.

a subsidiary of Barr Pharmaceuticals, Inc.

SNDA 000000001

## Barr Research

In support of the Plan B R$_x$-to-OTC switch and Supplement 011, an Actual Use Study and a Label Comprehension Study were conducted and, in totality with safety data available from Plan B worldwide post-marketing experience, demonstrated that: 1) the condition treated (prevention of pregnancy following unprotected intercourse or a known or suspected contraceptive failure) is self-diagnosable; 2) Plan B is safe for self-administration; 3) Plan B has low toxicity; 4) Plan B is effective in self-administration; and 5) that the labeling of Plan B is adequate for OTC use. Since Plan B meets the criteria for an OTC product, Barr proposes that Plan B be approved for OTC use by women age sixteen and older.

Although Barr maintains that Plan B is safe & effective as an OTC product, for women of all ages, Barr is willing to consider Plan B maintaining prescription status for women under age sixteen. This age restriction (under age sixteen) is due to the small number of women under age sixteen in the patient population studied in the Plan B Actual Use study, and is also intended to reduce to the absolute minimum any remaining concern about safety and efficacy in adolescents and about potential inappropriate use. It is important to note that 8.2% (N=48) of the women in the Plan B Actual Use Study were either age 16 or 17. Thus there are adequate data to support the ability of women sixteen and older to take Plan B appropriately in the OTC environment.

### Labeling

Barr proposes that, if an age restriction is required, there be one package (with label and labeling) for both OTC and prescription users of the product. Such a package can satisfy all applicable requirements under the Federal Food, Drug, and Cosmetic Act ("FDCA") and FDA's regulations.

The proposed package will have a printed label that includes all mandatory information for an OTC product. The proposed package will also have a blank space on a principal display panel on which the pharmacist can place the prescription label. This label will contain the names of the prescriber and the dispensing pharmacy; the prescription number and date; any directions or precautions specified in the prescription; and, if stated in the prescription, the name of the patient when the product is dispensed pursuant to a prescription. Thus, the label will be subject to all the affirmative requirements applicable to OTC labels: FDCA §§ 502(b), 502(c), 502(e)(1)(A), 502(f), 502(g); 21 C.F.R. §§ 201.1, 201.5, 201.10, 201.15, 201.17, 201.60-.62 (2003).

The label will also be subject, when the drug is dispensed pursuant to a prescription, to all the additional affirmative requirements applicable to labels of prescription drugs: FDCA §§ 502(b), 505(c), 502(e)(1)(B), 502(g); 21 C.F.R. §§ 201.50, 201.51, 201.100(b) (2003).

Section 503(b)(2) of the FDCA exempts a prescription drug from many of the requirements of § 502 if its label contains: (i) the name and address of the dispenser; (ii) the serial number and date of the prescription or its filing; (iii) the name of the prescriber, (v) if stated in the prescription, the name of the patient; and (vi) the directions for use and cautionary statements, if any, contained in such prescription. It is necessary that this information appear on the prescription label attached by the pharmacist when dispensing the product pursuant to a prescription.

SNDA 000000002

## Barr Research

Even though Plan B, as an OTC product, will bear adequate directions for use by consumers who, in accordance with the approved labeling, may buy the product without a prescription, it will not (in legal contemplation) bear adequate directions for use by patients who, in accordance with the approved labeling, may buy the product only with a prescription.[1]  Therefore, Plan B, when dispensed pursuant to a prescription, must comply with all the conditions, set forth in 21 C.F.R. § 201.100 (2003), for exemption from the requirement of adequate directions for use by the prescription population, FDCA § 502(f)(1).

Additionally, Section 503(b)(4)(A) provides that a drug subject to § 505(b)(1), *e.g.*, a drug limited to prescription status in its NDA, shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the symbol "$R_x$ only".  Section 503(b)(4)(B) provides that a drug that is not subject to § 505(b)(1) shall be deemed to be misbranded if at any time prior to dispensing its label does bear the symbol "$R_x$ only".

The juxtaposition of these two provisions raises the issue of the status of Plan B before dispensing.  Again, Barr proposes that FDA resolve this issue by stating in its letter approving Supplement 011 that Plan B is approved as an OTC drug, except that, before dispensing the product, the age of the patient be ascertained; and, if the patient is under age sixteen, the pharmacist may dispense the product only pursuant to a prescription.  Therefore, prior to dispensing, Plan B would be treated as an OTC drug.  In this circumstance, we suggest two possible alternative approaches to complying with section 503(b)(4)(A)-(B).  One is that Plan B's printed label would not bear the "Rx only" symbol (because, prior to dispensing to a women under age sixteen, plan B would be an OTC product).  That symbol, however, would be included on the Rx label (presumably, a sticker) that the pharmacist adds when dispensing the product pursuant to a prescription.  Alternatively, the statement, "Rx only for women under age sixteen" could be placed in the Plan B Drug Facts panel, thus allowing for conformance to 503(b)(4)(A) and 503(b)(4)(B), given the age restriction.  Barr is open to further discussing these possible alternatives or others proposed by the FDA if an age restriction is required.

The Plan B package will also need to contain labeling that complies with the labeling requirements applicable to OTC products, 21 C.F.R. § 201.66 (2003).

There will also need to be prescription labeling (a package insert) with respect to the class of patients under age sixteen to whom the product may be dispensed only pursuant to a prescription, 21 C.F.R. §§ 201.50; 201.56; 201.100(c); 201.100(e) (2003).  Thus, it will be necessary to revise the current package insert to reflect the narrowed prescription indication.

---

[1]     The legal theory justifying prescription status as to those patients is that adequate directions for use by them cannot be written.

SNDA 000000003

## Barr Research

Distribution

It is important to note that adoption of such an age restriction has three significant consequences: (i) as a practical matter, the product may be sold only in stores that have a licensed pharmacy and thus would be available only when the pharmacy is open; (ii) as a practical matter, the product must be stored behind the counter, so that the age of a would-be purchaser can be determined, and any necessary prescription can be provided, before the purchaser obtains the product; and (iii) there must be labeling suitable for both OTC and prescription users of the product.

Barr is prepared to distribute the product in the same way it distributes any other prescription drug product, i.e., by means calculated to result in the product being available at the retail level only in stores with licensed pharmacies or with a valid wholesale license.

Barr also proposes that it recommend to retailers that stock the product that they maintain it behind the pharmacy counter in their stores, and that they train their pharmacy personnel to dispense the product only in accordance with its labeling: i.e., that consumers with valid identification showing that they are age sixteen or above may obtain the product without a prescription, and that consumers without such identification may obtain it only with a prescription.

Lastly, although Barr is willing to consider circumstances in which Plan B would be approved for OTC use by women age sixteen and older, while maintaining prescription status for women under age sixteen, it is equally important that the regulatory requirements and pathway for obtaining full OTC status (i.e., removal of the age restriction) be enumerated should this approach be accepted. Barr requests that FDA be willing to fully discuss this issue and to consider including in any approval letter the conditions required to seek removal of the age restriction.

Please do not hesitate to contact the undersigned at (610) 668-2989 if you have any questions.

Sincerely,

Joseph X. Carrado, M.Sc., R.Ph.
Senior Director, Regulatory Affairs

cc:    Karen Anderson, Regulatory Project Manager, HFD-580 (fax copy)
       Tia Frazier, Regulatory Project Manager, HFD-560 (fax copy)

SNDA 000000004