UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNIE TUMMINO, *et al.*,<br><br>                          Plaintiffs,<br><br>            v.<br><br>DR. MARGARET HAMBURG, in her official capacity as Commissioner of Food and Drugs,<br><br>                          Defendant. | Civil Action Nos.<br>CV-05-0366<br><br>(Korman, J.)<br>(Pohorelsky, M.J.) |

### DECLARATION OF JANE A. AXELRAD

**JANE A. AXELRAD**, declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the Associate Director for Policy, Center for Drug Evaluation and Research ("CDER"), United States Food and Drug Administration ("FDA"). In this capacity, I am familiar with the instant matter and the facts stated below. I submit this declaration to advise the Court regarding FDA administrative and regulatory procedures, and FDA's course of action regarding implementation of this Court's March 23, 2009 Memorandum and Order (the "March 2009 Order"). I also submit this declaration to place the relevant documents on the record in support of Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Civil Contempt.

2. At the time of the August 2006 approval of the Plan B supplemental drug application, Barr Pharmaceuticals was the parent of Duramed Research, Inc. ("Duramed"), the subsidiary company sponsoring the Plan B drug application. I understand that since that time, Teva Pharmaceutical Industries Ltd. acquired Barr Pharmaceuticals (and its subsidiaries, including Duramed). Although the Plan B application remains in the name of Duramed, the

1

company appears to be using the name Teva Women's Health, Inc. in its recent communications with FDA relating to its emergency contraception products.

3. A true and correct copy of the April 21, 2009 letter from the Food and Drug Administration ("FDA") to Duramed Research, Inc. ("Duramed") is annexed hereto as Exhibit A.

4. On June 11, 2009, Duramed/Teva Women's Health submitted a supplemental application to change the age for nonprescription availability of Plan B from 18 to 17 years of age. A true and correct copy of the cover letter to Duramed's June 11, 2009 supplemental application to change the age for nonprescription availability of Plan B from 18 to 17 years of age is annexed hereto as Exhibit B.

5. A true and correct copy of the FDA's July 10, 2009 letter approving Duramed's June 11, 2009 supplemental application to change the age of nonprescription availability of Plan B from 18 to 17 years of age is annexed hereto as Exhibit C.

6. A true and correct copy of the FDA's July 10, 2009 letter approving nonprescription distribution of Plan B One-Step to women ages 17 years and older is annexed hereto as Exhibit D.

7. Plan B One-Step contains the same active ingredient (levonorgestrel) and is approved for the same indication as Plan B (to prevent pregnancy after known or suspected contraceptive failure or after unprotected intercourse). The difference between these products lies in their dose and directions. Specifically, Plan B uses a two dose regimen with 0.75 milligrams of levonorgestrel in each tablet (to be taken 12 hours apart), while Plan B One-Step is a single dose emergency contraceptive that contains 1.5 milligrams of levonorgestrel in a single tablet.

8. Plan B One-Step is currently available, without a prescription, to women 17 years of age and older, and by prescription only for women 16 years of age and younger. I understand that, currently, Duramed/Teva Women's Health only markets Plan B One-Step; Plan B is no longer marketed.

9. On June 24, 2009, FDA approved a generic emergency contraceptive product containing levonorgestrel 0.75 mg per tablet manufactured by Watson Laboratories, Inc. called "Next Choice." Next Choice contains two 0.75 milligram doses of levonorgestrel to be taken 12 hours apart. A true and correct copy of FDA's June 24, 2009 letter approving Next Choice is annexed hereto as Exhibit E.

10. The initial approval of Next Choice was for prescription use only, because Duramed/Teva Women's Health retained marketing exclusivity for Plan B for nonprescription use until August 24, 2009. On August 28, 2009, four days after expiration of Duramed/Teva Women's Health's marketing exclusivity for Plan B for nonprescription use, FDA approved Next Choice for nonprescription use by females 17 years of age and older. Next Choice is now available, without a prescription, to women 17 years of age and older. A true and correct copy of FDA's August 28, 2009 letter approving Next Choice for nonprescription use by females 17 years of age and older is annexed hereto as Exhibit F.

11. On July 17, 2009, FDA re-opened the docket for the February 1, 2001 citizen petition (docket # 2001P-0075/CP1) (hereinafter the "Citizen Petition"). A true and correct copy of the Citizen Petition is annexed hereto as Exhibit H. To date, the Citizen Petition docket remains open for submission of further comments, evidence, and information. Although certain parties, including Plaintiffs, have continued to make their views known to FDA, no new data or information have been submitted to FDA regarding the nonprescription approvability of Plan B

3

(or any levonorgestrel product) for females under the age of 17.

12. FDA and Duramed/Teva Women's Health communicated regarding what data and information would be required to support a supplemental application for over-the-counter approval of Duramed/Teva products for females under 17. In the course of those communications, Duramed/Teva Women's Health informed FDA that it intended to conduct the required studies using Plan B One-Step, not Plan B, as Duramed/Teva Women's Health was no longer planning to market Plan B. Those communications continued as Duramed/Teva Women's Health conducted clinical trials/studies to develop data regarding whether women younger than 17 years of age can use Plan B One-Step safely and effectively, without counseling from a physician or other medical professional.

13. FDA has been advised that Duramed/Teva Women's Health is now close to completing its studies on the nonprescription use of Plan B One-Step, and that it anticipates filing a supplemental new drug application seeking approval of over-the-counter use of Plan B One-Step for women under 17 years of age in the first quarter of 2011. When submitted, FDA will review Duramed/Teva Women's Health's application to determine whether it meets the standards for approval set forth in the FDCA and in FDA regulations.

14. Under FDA's performance goals for the review of standard new drug applications and supplemental applications, most standard new drug applications and supplements are to be reviewed within 10 months from the date the application is accepted for filing (unless the sponsor submits a major amendment less than 90 days before the conclusion of that period). A true and correct copy of a document entitled "Section A: PDUFA Reauthorization Performance Goals And Procedures Fiscal Years 2008 Through 2012" is annexed hereto as Exhibit G.

15. Although Duramed/Teva Women's Health's studies relate only to the use, by

4

females under the age of 17, of Plan B One-Step (as opposed to Plan B), FDA believes that those studies (and any data developed therein) are relevant to the concerns expressed by Plaintiffs in this case, as well as the relief ordered in the March 2009 Order. Specifically, FDA believes that the submission of a supplemental application containing the data from Duramed/Teva Women's Health's studies will support a timely and scientifically sound determination regarding whether Plan B One-Step can be distributed over-the-counter to females under the age of 17.

16. FDA has concluded that the best way to implement the March 2009 Order's direction that FDA reconsider the "switch to OTC use" is to review and consider the new data expected to be submitted in the Duramed/Teva Plan B One-Step 2011 supplemental application, rather than reconsidering the denial of the Citizen Petition at this time. FDA believes that this is the best course of action as a matter of science, and as a matter of efficiency, as review of the anticipated supplemental application will not require FDA to engage in time consuming notice and comment rulemaking proceedings.

17. To grant the relief requested in the Citizen Petition – that FDA "switch [Plan B] from prescription to over-the-counter (OTC) status . . . ," FDA would first need to determine if sufficient data exist to support proposing a rule to switch the product to over-the-counter status for all age groups. FDA would then proceed to notice and comment rulemaking only if it determined that there were sufficient data to support the proposed switch.

18. Even if FDA did proceed to rulemaking, however, rulemaking is a time consuming process (especially when the level of public interest is high). Notice and comment rulemaking proceedings can typically require at least three (and usually more) years to complete, and no actual approval could be effected until those proceedings were concluded.

19. Pursuant to 21 U.S.C. § 355(b) - (d), a drug sponsor must obtain FDA approval of

5

its labeling, or changes to the labeling, before it markets its products with that labeling. Thus, even if the outcome of rulemaking were a determination that a product is safe and effective for its intended use, the sponsor would need to submit new labeling to FDA for approval before it begins marketing. Because the rulemaking process and the approval of new labeling would both be necessary for a final approval of an over-the-counter switch, the relief requested in the Citizen Petition could be granted only after both steps were accomplished. As a result, the promulgation of a rule switching emergency contraceptive products containing levonorgestrel from prescription-only to nonprescription status for females under the age of 17, and any granting of the Citizen Petition, would likely take at least three (and possibly several more) years.

20. When FDA reviews the supplemental drug application expected to be submitted by Duramed/Teva Women's Health in 2011, FDA will be presented with Duramed/Teva Women's Health's data regarding whether females under 17 years of age can use Plan B One-Step safely and effectively, without counseling from a physician or other medical professional. Under the sponsor's currently expected course of action, in a little more than a year from now, FDA should be in a position to determine whether nonprescription Plan B One-Step can be approved for females under 17 years of age without further clinical study

21. The process of reconsidering the Citizen Petition to determine whether to engage in notice and comment rulemaking proceedings, as well as the rulemaking proceedings themselves, would not necessarily elicit the same type of data as would be included in a supplemental drug application. This is particularly true where a drug sponsor is conducting required studies in support of a supplemental drug application. Were FDA to reconsider the Citizen Petition at this time, there is no guarantee that FDA would ever be presented with any additional data relating to whether any levonorgestrel product can be safely and effectively used

6

by all females under the age of 17 without a prescription and without medical supervision.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: _____
January 6, 2011

_____
JANE A. AXELRAD
Associate Director for Policy
Center for Drug Evaluation and Research
Food and Drug Administration
U.S. Department of Health and Human Services