UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X Docket#
TUMMINO, et al,                 : 05-cv-366(ERK)
             Plaintiff,         :
                                :
    - versus -                  : U.S. Courthouse
                                : Brooklyn, New York
VON ESCHENBACH,                 :
             Defendant          : December 13, 2011
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES DISTRICT JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Plaintiff**:          **Susan Novak, Esq.**
                                Center for
                                Reproductive Rights
                                120 Wall Street
                                14th Floor
                                New York, NY 10005


**For the Defendant**:          **Loretta E. Lynch, Esq.**
                                United States Attorney

                           BY:  **Scott Landau, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York  11201




**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                3589 Tiana Street
                                Seaford, N.Y.  11783
                                Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings                                    2

THE CLERK:  Tummino v. Von Eschenbach.  Your appearances, counsel.

MS. NOVAK:  Susan Novak for plaintiffs.

MR. LANDAU:  Scott Landau from the United States Attorney's Office for Commissioner Hamburg and with me is Karen Schifter (ph.) from the FDA.

MS. NOVAK:  With me are my colleagues, Ann Vanderwalker and Bibi Anderson (ph.), all from the Center for Reproductive rights.

THE COURT:  Okay.  It's your motion.

MS. NOVAK:  Thank you.

THE COURT:  What's left of it.

MS. NOVAK:  Good afternoon, your Honor.

We are here today as a general matter because the FDA has refused for over a decade to give a fair and reasonably based review of plaintiff Citizen's Petition. The events over the past week underscore why we are here today specifically because the FDA has refused to give a fair and scientifically based review of the Citizen's Petition, even after this court ordered it to do so, over two and a half years ago.

THE COURT:  Well, they've entered an order denying your application.  So that moots your motion to hold them in contempt.

MS. NOVAK:  Your Honor, I respectfully

Transcriptions Plus II, Inc.

Proceedings                                                3

disagree.  Plaintiff's motion for contempt asks for three forms of relief.  It asks for this court to adjudge the FDA in contempt of this court's March 2009 order.  It asks the Court to order the FDA to rule on the Citizen's Petition within forty-five days and it asks this court to grant any further relief that is just improper.  It's only the second of those requests for relief that have been mooted and on the very first page of plaintiff's brief in support of their motion for contempt, they said that the FDA has failed to meaningfully comply with this court's 2009 order.

THE COURT:  Well --

MS. NOVAK:  And it is the --

THE COURT:  Well I think that they've complied in the sense that they have ruled on it; whether it was meaningful is a separate question.  I don't know that contempt is an appropriate remedy.  I mean I think you should focus on number three.

MS. NOVAK:  Further relief is just improper.  Yes.  Well --

THE COURT:  I mean, I don't know whether that takes -- I mean what do you normally do when you get a denial of a petition?  Is it a formal appeal or an application?  I don't --

MS. NOVAK:  Well, our view in this court, if

Proceedings                                          4

your Honor believes that the motion is moot, then we would argue and we would petition for the Court that the new denial is also arbitrary and capricious and ask thee Court to afford appropriate and just relief for that arbitrary and capricious denial.

THE COURT:  Well, I had asked the question, I don't know whether you got the bounce off the --

MS. NOVAK:  Yes.

THE COURT:  -- ECF as to whether or not the study that was submitted by Teva which the Secretary found inadequate because it wasn't -- it did not adequately provide that on the ability of eleven-year-olds to understand the instructions, whether that study that was submitted by Teva was adequate as to anyone else in the group under seventeen and older than -- and twelve and older.

MR. LANDAU:  Well, Judge, respectfully it's a question that goes to the merits of the Plan B One Step supplemental application determination and Secretary Sebelius' ultimate direction to the FDA.  It's an issue that we believe is not properly before this court on this contempt application.

THE COURT:  So you --

MR. LANDAU:  And the --

THE COURT:  Well you don't want to answer it?

Transcriptions Plus II, Inc.

Proceedings                                                    5

MR. LANDAU:  Well, your Honor, the Commissioner of the FDA isn't in a position to be able to answer the question.  Not only is she not authorized to do so because of the issues that are before this court but the Commissioner of the FDA who is the defendant in this case, her understanding of the Secretary's direction is based upon the same documents, the press release and the memorandum that was sent to her that (indiscernible).

THE COURT:  Well, I mean assuming they challenge the -- they could come back and challenge it. I mean I don't know why you don't -- I suppose I do know why you don't want to answer the question.  I shouldn't say I don't know why you don't want to answer the question.  But it seems to me that what we're going through is a rerun of what happened before.

This case started with the FDA refusing to make it available over-the-counter to anyone because the studies were inadequate as to those under seventeen.  So because the studies were inadequate in terms of demonstrating whether women under the age of seventeen could understand the instructions, they refused to make it available without a prescription to all women. Without getting into the reasons why, they subsequently agreed that they would make it available to women without a prescription but behind the counter for women eighteen

Transcriptions Plus II, Inc.

Proceedings                                                    6

and older, even though the exact same study that they relied on for the women eighteen and older applied to women who were seventeen.  And then as a result of my decision, they reduced it to seventeen.

Now it seems to me that I've asked you a basic question which goes to the logic of whether or not because an eleven-year-old can't understand the label, you don't make it available to people -- women who are over eleven and who can understand the label.  And I'm not asking you for your own opinion as to whether they can, but what the study showed.

MR. LANDAU:  Well, your Honor, with respect to the studies, it's not a question that I am prepared to answer today, not only because it's not --

THE COURT:  Is this not a public -- the studies are not a public record?

MR. LANDAU:  That is correct, your Honor.  Some of the studies are confidential, proprietary information that was supplied by Teva to the FDA.  So the FDA is not in a position to be able to opine on the actual substance of those studies.

THE COURT:  You mean the study of who could understand the label is not available to the public?

MR. LANDAU:  I believe that the label comprehension studies, the proposed results are publicly

Proceedings                                                        7

available.

THE COURT:  So what's the answer?

MR. LANDAU:  The actual use studies are not publicly available.  But agin, your Honor --

THE COURT:  I don't know -- could you tell me the difference?

MR. LANDAU:  Again, your Honor, I would state that the Commission of the FDA is not in a position to answer those questions.

THE COURT:  Who are you representing?  You're representing the Commissioner or the Secretary?

MR. LANDAU:  Well, your Honor, the FDA made the determination that the studies were sufficient to support the approval.

THE COURT:  I understand.

MR. LANDAU:  It was the secretary's direction.

THE COURT:  I understand.  I'm just asking you, the secretary said, at least to the extent that I read it, if I read it correctly, that because women or girls under the age of twelve couldn't understand or that the studies didn't show that they could understand the label, therefore it was not going to be made available to anyone under the age of seventeen.  And I think it's a reasonable question to ask whether or not those studies showed that women between those two ages were capable of

Transcriptions Plus II, Inc.

Proceedings                                              8

understanding the label.

MR. LANDAU:  Well, Judge, as the Commissioner of the FDA indicated in her press --

THE COURT:  She didn't answer that question.

MR. LANDAU:  Well she indicated in her press release, it was the FDA's position that the studies were sufficient to support the switch for all ages.

THE COURT:  I know.  But now I'm asking you, accepting that they were inadequate for eleven-year-olds, is it the position of the Secretary that they're inadequate for a fifteen-year-old?

MR. LANDAU:  And, your Honor, I'm not in a position to be able to answer that question on behalf of the secretary in this particular contempt proceeding.

THE COURT:  Well, we're beyond -- first of all, I'm not going to hold the FDA in contempt.  I had my doubts about it to begin with which is one reason I was hoping that the issue would be mooted because I don't exactly know how to hold the FDA in contempt and what I would do if I did.  But we're beyond that.

They also asked for any relief, any other relief that was just improper and we could go through the formality of them bringing on a motion.  I think I've asked a simple question.  I don't understand why you don't answer it.

Proceedings                                          9

MR. LANDAU:  I apologize, your Honor.

THE COURT:  Somebody tell you not to answer it?

MR. LANDAU:  Quite frankly, I don't know the answer to the question representing the Commissioner as I sit here today.  My understanding is that the Commissioner's understanding, who I represent, is what she set forth in her press release.

THE COURT:  I understand that and she was overruled and I told you the grounds for overruling, at best if one accepts them, and I accept them for present purposes, are that the studies don't show that eleven-year-olds can understand the label.  And therefore, she's not making it available to twelve-year-olds, thirteen-year-olds, fourteen-year-olds, fifteen-year-olds, sixteen-year-olds.

And I'm just asking whether or not the studies are sufficient to provide an answer with respect to people in that age group because otherwise, it seems to me, we're back exactly where we were, in the old -- in what you could call Tummino-1.

And it seems like it's completely and totally arbitrary, if in fact the studies were adequate to indicate that people in -- women within a group beyond the age of twelve are capable of understanding the label.

MR. LANDAU:  And, Judge, what I can say is that

Transcriptions Plus II, Inc.

Proceedings                                          10

the FDA believed that the data was sufficient to support the switch for all of those --

THE COURT:  I know.  You keep repeating yourself.  I understand that but the FDA's decision is essentially the Secretary's decision, not the FDA's decision.  And I assume that if they came back, I would be reviewing -- you know, I'm not sure exactly what happens here, whether the FDA then enters an order based on the Secretary's decision or whether the Secretary's decision is the final decision.  Which is it?  I don't know.

MR. LANDAU:  Well, the Secretary directed the FDA to issue what's called a complete response letter.

THE COURT:  Right.  So then the FDA's decision would be the one that would be reviewed.

MR. LANDAU:  Well, your Honor, respectfully I would suggest that the plaintiffs in this case don't have standing to seek review of that decision.  That's an application that was made by the Plan B One Step sponsor, Teva.  And if Teva wished to either provide additional data to the FDA, it could do so or if it wished to take an appeal with the FDA, it could do so.  But that's not an issue that is properly before this court in this case.

THE COURT:  Well, that's another thing we went through the last time.  We've gone through it.  That

Transcriptions Plus II, Inc.

Proceedings                                11

argument was made the last time, too.  I mean the reason that -- these two applications were deemed to be related all along.  That's why you didn't decide their application until two days after you or three days or four days, whichever it was, after you ruled on Teva's application.  There's no reason why they can't rely on the materials submitted by Teva.

MR. LANDAU:  Your Honor, respectfully, I would disagree with that.  The study data that would support -- that was submitted by Teva in the first instance, it's proprietary and confidential information.  It can't be used in support of the Citizen's petition.

THE COURT:  Because it's proprietary and confidential?

MR. LANDAU:  Unless Teva gave express authorization for that.  But number two and perhaps more importantly, Plan B One Step is a different drug than Plan B.

THE COURT:  Yes, I know.  It's two pills instead of one.

MR. LANDAU:  They have the same --

THE COURT:  And all of the -- I mean you go through about five different -- in your letter, about five different issues that have to be covered in the warnings, all of which it would seem to me to be the same

Proceedings                                    12

except that the warnings would say you take instead of one pill, it would say you take two pills.  And I don't think that anybody would have trouble understanding that; do you?

MR. LANDAU:  I do, your Honor.

THE COURT:  You do?

MR. LANDAU:  The directions for Plan B One Step are different and much simpler than the directions for Plan B.  And we're talking about eleven-year-olds and twelve-year-olds in particular.

THE COURT:  Well, I'm not talking about. That's what -- first of all, I'm willing to accept for the present purposes, the Secretary's determination.  I may reject it at some point if it's ever properly before me.  I don't know but you keep avoiding the more basic question and I suspect the answer is is that the studies were adequate to show that groups above the age of twelve or thirteen, whatever, are sufficient.  And if you want, you don't have to even give me the so-called proprietary information.  You could give me an affidavit saying they're not and I may believe it.

MR. LANDAU:  Well, your Honor, I think what my point was in addition to that --

THE COURT:  Unless I don't believe it if Ms. Lynch doesn't.

Proceedings                                    13

MR. LANDAU:  The data in support of the Plan B One Step application, in particular the label comprehension data, it's not applicable to Plan B.  It's a different label --

THE COURT:  Well, you'll tell me what the difference is.  I mean as far as I could see, the principle difference is that you would take two pills instead of one.  I mean it's the same -- you told me yourself it's the same drug.  The quantity is even the same, except that you take it once instead of two, was it 75mgs. -- instead of two 75mgs. you take 100 and 50mg. tablet and that would be -- otherwise, I don't know what the difference would be on the label.

MR. LANDAU:  Judge, I would respectfully disagree with calling them the same drug.  They do have the same indication but the difference --

THE COURT:  I mean the same -- it's like Tylenol is made of acetaminophen and it would be one 75mg. pill of acetaminophen or two -- I'm sorry, one 150mg. pill of acetaminophen or two 75mgs.  What I'm saying is it's the same chemical.  It's the same drug.

MR. LANDAU:  They do have the same active ingredient.  They do have the same medication.

THE COURT:  Exactly.

MR. LANDAU:  But the directions and the dosing

Proceedings                                          14

are different.  And in particular --

THE COURT:  The dosing, of course is different because it's one pill or two but the question is, is that something that people have difficulty understanding?

MR. LANDAU:  Certainly when it comes to label --

THE COURT:  I mean people within the -- let's assume eleven-year-olds couldn't for the moment -- I mean if you compared that piece of information with -- tell me what page of your letter you list me the warnings that now given, I forgot.

MR. LANDAU:  Well, in particular, you could look at page 2 of FDA's decision and what the FDA is saying is that number one, because the directions are different.  Plan B requires --

THE COURT:  No, I don't want to see what they say.  I want to see what you told me -- in this letter, you said what the warnings were.

MR. LANDAU:  You can look here.  That's just the introduction.

THE COURT:  No, I thought that I read this later on.  Maybe I didn't, the various warnings and the --

MS. NOVAK:  Let's see, you have comprehend as pages 8 to 9 of what they tested for.

Transcriptions Plus II, Inc.

Proceedings                              15

THE COURT:  Yes.  The studies -- it says, "For example, it evaluated women's comprehension of the following key elements of Plan B One Step label.  Plan B One Step is indicated for prevention of pregnancy after unprotected sex."  That's true of Plan B.

"Plan B One should be taken as soon as possible after sex."  I assume that's equally true of Plan B, except for the interval.

"Plan B Step One (sic) does not prevent sexually transmitted diseases or HIV."  That's true for Plan B.

"Plan B One should not be used in place of regular contraception."  I assume that's true for Plan B.

"Plan B should be --" I'm going to skip over that for one minute.  "Plan B One Step should not be used by women who are already pregnant."  And I assume that's equally true for Plan B.

And then finally, "Plan B Step One (sic) should be taken within seventy-two hours of sex."  That's also true.

So the only question is the ability to understand whatever it is the time differential is between the two pills.

MR. LANDAU:  Well, that is what the FDA considers to be a significant difference between these

Transcriptions Plus II, Inc.

Proceedings                                          16

two products.

THE COURT:  I know it's significant but how many -- significance is a -- then you take one pill at one time and then you take two pills at a particular interval, whatever that interval is.

MR. LANDAU:  And --

THE COURT:  How significant that is in terms of the ability of people to understand it is another question.

MR. LANDAU:  And that's a question --

THE COURT:  I would think these are the more complicated ones in quotes.

MR. LANDAU:  Well, especially in particular in terms of label comprehension, the FDA believes that the question of whether females under seventeen can correctly follow the directions for Plan B and take one pill and then take another pill --

THE COURT:  Well, look, you'll --

MR. LANDAU:  -- in twelve hours is a critical question.

THE COURT:  Are you telling me that -- so are you answering my question?

MR. LANDAU:  I believe I am, Judge.

THE COURT:  No, no.  So you're saying that they believe that the study was inadequate as to anyone under

Proceedings                              17

the age of seventeen?

MR. LANDAU:  The studies are related to Plan B One Step, not to Plan B.

THE COURT:  I understand that.

MR. LANDAU:  So they could not be transferred over to Plan B.

THE COURT:  You keep -- that's what you say -- said a lot of things a week before you put -- the FDA made it available to women over the age of eighteen behind the counter.  The assistant United States attorney with the representative of the FDA sat here in front of me and told me it couldn't be done, absolutely it couldn't be done.  It was not practical.  It was impossible.  And one week later, they did it.  So you don't come here cloaked with a great deal of credibility.

MR. LANDAU:  Well, Judge, respectfully I think we're certainly in a different procedural posture now. The FDA has taken your order to hear and has gone back and --

THE COURT:  The FDA has but, you know, we -- look, the FDA has -- they did take my order to heart and they did what they thought was right and they were overruled by the Secretary and that, of course, raises a separate question.  But, you know, the FDA basically would make it available to everyone.  So we're dealing

Proceedings                                        18

with a narrow -- so now we're dealing with the Secretary who said she's not making it available to anyone under seventeen because eleven-year-olds can't understand the label.  And something that's been done -- I mean if you believe what you read in the newspapers, this is the first time in the history of HHS the Secretary has overruled the FDA.  And it simply raises the same issue that was raised in the earlier case about whether these decisions are made on the basis of politics or hard data.

MR. LANDAU:  Well, Judge, I would respectfully suggest that the decision at the FDA level was based upon the science.

THE COURT:  It certainly was.

MR. LANDAU:  And the decision by the Secretary, as far as her statement indicates, it was based upon a considered (indiscernible).

THE COURT:  You know, you keep running away from -- you know, you keep walking away, you won't answer the most relevant question and you're telling me that I should accept that everything has been done here in good faith.

MR. LANDAU:  I believe --

THE COURT:  I mean, you won't even give me -- forget about, you know, hiding behind secret proprietary information, assuming you're even right about that, and

Proceedings                                          19

you could give me an affidavit that answers the question without providing the data.

MR. LANDAU:  Well, your Honor, we can certainly go back and take that into consideration and see what we can come up with to put before the Court.

THE COURT:  You could answer that question in an affidavit as to what --

MR. LANDAU:  Your Honor, I would just again posit that the reasons behind the Secretary's decision are not properly before the Court.  And the Court --

THE COURT:  They may not be immediately but they will be.

MR. LANDAU:  It's possible that at some point they may be but at this point, they're not.  So I don't think that we're prepared to delve into that question.

THE COURT:  So what is the best way to proceed here?  I think -- well, first of all, I don't know the formalities of how you take an appeal here.  I mean you have to file a notice of appeal or you file some piece of paper?

MS. NOVAK:  I think we would request the Court to reopen the -- request from the Court to reopen the case.  And we would also request if the -- we believe that your Honor should and in align with your 2009 order, we've met the standards for you to order all

Proceedings                                                    20

Levongorgestrel-based EC to be made over-the-counter without restrictions.  If your Honor's not inclined to do that, we would then request --

THE COURT:  Well I wouldn't do it -- let me put it this way.  I wouldn't do it now.  I think we ought to take this step-by-step.

MS. NOVAK:  Right.  So then --

THE COURT:  I think we ought to deal with -- if the Secretary is focusing on the adequacy of the study for people who are eleven-years-old which is really a very -- again, I only know what I read in the newspaper which is not always the best source of information, is a tiny fraction of the people who are affected by this order.

MS. NOVAK:  Yes.

THE COURT:  So I think we ought to deal with what I think is the more basic question and that is whether or not the studies support the denial for everyone else.

MS. NOVAK:  If I may, your Honor, I first want to backup a little and just reiterate what your Honor found in your March 2009 order which was even asking for new data was unprecedented and was an example of the arbitrary and capricious behavior of the FDA --

THE COURT:  Well --

Transcriptions Plus II, Inc.

Proceedings                                    21

MS. NOVAK:  -- because there was already data in the record that the label for Plan B with the two pills was understood by women of all ages.

THE COURT:  I read my opinion over quickly before we came down here and I think it was based on some notion of extrapolating --

MS. NOVAK:  Yes, right.

THE COURT:  -- from adult tests and, you know, I never really focused on whether that -- whether you could extrapolate eleven-year-olds, let's say, from tests that were --

MS. NOVAK:  But in the order --

THE COURT:  -- adults.

MS. NOVAK:  In the order there, you did find and there was data in the original studies for adolescents in that.  So there was actually more information than there normally is and the pediatric unit, all sorts of units had said there needs to be more data.  So we start with that, that there was already sufficient data.

THE COURT:  Right, so --

MS. NOVAK:  Right.

THE COURT:  Maybe the FDA itself in this case is satisfied.

MS. NOVAK:  Right.  And then it's a constant

Proceedings                                    22

moving of the goal post.  Okay.  You get more data.

Okay.  So now we want data for eleven-year-olds where,

you know, eleven-year-olds as your Honor mentioned,

there's a document in the record that eleven-year-olds

constitute less than two one-hundredths of a percent of

the people who use EC.  So this is like a red herring of

what they're concerned about.

We also need to recognize that it's

unprecedented for the FDA to do what it did here.  Even

if they were concerned about eleven-year-olds, they deal

with those concerns about putting warnings on labels.

There are drugs that are available over-the-counter where

they have severe risks and side effects, even Tylenol

like you mentioned, is severe liver disease, Advil,

stomach ulcers, asthma, whereas there are no side

effects, there are no serious or long-term side effects

for emergency contraception.

THE COURT:  Well I think the focus, to play the

devil's advocate is not so much on whether it's --

whether the product itself is more or less safe than

aspirin from which you could die of a hemorrhage if you

take too much but what might be called a collateral

consequences of making it available in terms of

unprotected sex and the affect that that could have, if

it encourages people -- young girls to have unprotected

Transcriptions Plus II, Inc.

Proceedings                                           23

sex.

So there are -- again, to play the devil's advocate, there are -- it's not so much the -- whether the FDA can consider that is an interesting question that I've looked into but passed over, but it's a slightly different -- it's not simply understanding the intrinsic problems in terms of what happens if you take too much. I mean it's unlikely that $50 a pill, that anybody's going to overdose on this.

MS. NOVAK:  Or eleven-year-olds having --

THE COURT:  Well, the eleven-year-olds --

MS. NOVAK:  -- hundreds of (indiscernible).

THE COURT:  Yes, they're a tiny fraction but arguably, there are other considerations.

MS. NOVAK:  As your Honor stated, the Secretary's position was not about the collateral consequences which as you know we believe they're not allowed to take into account under their authority --

THE COURT:  I know.

MS. NOVAK:  -- but was about some sort of lack of data.  Like I said, it's just a constant moving of the goal posts.  And it's actually -- given how few eleven-year-olds use EC, it's probably an impossibility to have such data because if you only have less than two-hundredths of one percent of the users are eleven, you're

Transcriptions Plus II, Inc.

Proceedings                                24

never going to be able to put together a study for this.

I also, you know, would just like to give a response to --

THE COURT:  You may not want to admit it but you may not even really care that much about that particular dividing line for these purposes but you don't have to answer that question.

MS. NOVAK:  You know, we agree that, I mean, as I said, that you know, if there were concerns -- as this court found several years ago, it's okay to treat drugs differently, as long as there is an established reason for it and it's not implausible against the backdrop of the bad faith that has gone on here for ten years.

And here, the FDA or the Secretary acting in her power to execute the FDA's provisions is turning the statutes on their head.  As your Honor described in the order, the amended -- the statutes that set up were set up in a way that the default status is OTC and the statutes were set up to relieve consumers and pharmacists from the burden of having to go through that step.  So it's -- drugs are assumed OTC and it's only if the FDA determines that they're too toxic or not safe, that they should then make it prescription only.

And so here by saying that eleven-year-olds, you know, that's a reason, they need to show why this is

Transcriptions Plus II, Inc.

Proceedings                                                25

toxic or why it's not safe and effective.  There is no reason for treating this drug differently.  Indeed, as we know, there are many more dangerous drugs that are over-the-counter.  If anything should be treated for prescription, it should be those and not this, unless they're taking collateral consequences into account and not admitting it.  And --

THE COURT:  Well they may be.  I mean, I would assume they are.  And, you know, I never reached the issue of whether --

MR. LANDAU:  Well, Judge if I could --

THE COURT:  -- under the statute, anything other than safe and effective in terms of the intrinsic uses is -- can even be considered.

MS. NOVAK:  And I also --

MR. LANDAU:  Judge, if I could have the opportunity to just respond to the arguments that have been made so far.  In the first instance, that everything that plaintiff's counsel is saying right now are issues that go to the merits of the FDA's decision and that's not at issue before the Court today.

THE COURT:  Not today.

MR. LANDAU:  In addition, I would completely disagree with the plaintiff's characterization of this court's order.  Neither this court nor the FDA ever

Transcriptions Plus II, Inc.

Proceedings                                    26

determined that there was sufficient data to support the switch for females under seventeen.

This court did determine that there was sufficient data to support the switch from eighteen to seventeen. And if the Court had found that there was enough data to support the switch for seventeen-year-olds and younger, it would have directed that but it didn't.

Instead, what the Court did is it remanded to the FDA to reconsider that question and (indiscernible).

THE COURT: Well I did because I thought the -- I reversed and made it seventeen instead of eighteen because the very same data that the FDA relied on to make it available to eighteen-year-olds applied to seventeen-year-olds. And I sent it back to the agency because --

MR. LANDAU: Well --

THE COURT: -- I found that they not acted in good faith and that there was no reason to be concerned whether that same bad faith would be present because there was a change of administration.

MR. LANDAU: Understood, Judge. The question of whether there was enough data to support the switch for women under seventeen, it's a question of scientific debate both inside and outside of FDA but ultimately, FDA has taken the position that there is not sufficient data.

THE COURT: I know but look --

Transcriptions Plus II, Inc.

Proceedings                          27

MR. LANDAU:  That's why it denied the Citizen's Petition.

THE COURT:  The decision is reviewable at some point.  Teva has an interest in the Plan B One and they may appeal because the Plan B One, they have a-- they get an exclusive right to market it for three years and they have no particular reason to care about Plan B or the generic versions of Plan B.  So for their own economic reasons, they may not have any reason to care about what happens here but that's a separate issue.

Look, I am not going to decide anything today. I think they ought to make a motion.  I think you should answer it and I think I -- if you're not going to provide me with the study on the grounds that it's somehow proprietary information of Teva's which seems -- you may be right.  I just find it hard to believe that that kind of information would not be publicly available, whereas all of my financial holdings are.  Then I'll take an affidavit saying that if it's true, if that's what you're prepared to say, that the studies that were submitted by Teva are inadequate even with respect to people who are sixteen, fifteen, fourteen, thirteen and twelve, that there was not a sufficient -- the study, I guess wasn't sufficiently representative because the Secretary stuck with eleven and said because of eleven, I'm not making it

Proceedings                                    28

available to let's say a sixteen-year-old which of course, if that's true, would be the height of arbitrariness.

MR. LANDAU:  Understood, your Honor.  And I would just again repeat that because the question isn't before the Court, I'm not sure that --

THE COURT:  Well, you know, --

MR. LANDAU:  -- (indiscernible).

THE COURT:  -- for the moment, I have the authority to decide what's before me and they will file an appropriate document that will at least bring before me the denial of their citizen's application.  And it was my view that I expressed in the earlier opinion that I could consider other evidence that was before the FDA in another case and you expressly told me -- I don't mean you personally, but it was the government's position throughout -- after all, I decided this case -- I remanded for reconsideration on March 23, 2009, and here we are on December -- I don't know, 11, 12, 2011 and you just decide their application on remand.  And it was quite clear that the position that you were taking I think in the papers, was that your decision on Plan B One would resolve this.  And that -- that's the only reason I could think of, otherwise, you should have just flat out denied it if they didn't submit the actual studies.  So

Proceedings                                        29

this is exactly what happened the last time around.  You link them together and then all of the sudden, they're declined.

MR. LANDAU:  Your Honor, I would respectfully disagree and the position the FDA's been taking was that the question it needed to consider was, was there enough data to support the switch?

THE COURT:  Yes, we keep saying the FDA, it's really the Secretary now, but it doesn't -- it's not all together irrelevant whose decision this was.

MR. LANDAU:  But the --

THE COURT:  But if the FDA is acting on the directive of the Secretary, it's not all together irrelevant that they happen to take a position that's different from that of the Secretary even as to eleven-year-olds but I'm willing to accept her decision for the present purposes as to eleven-year-olds.

MR. LANDAU:  Judge, the FDA took the position that a decision, an approval of the One Step application would hopefully result in the relief that plaintiffs were looking for, namely to have one of these drugs on the market.

But the decision on the Plan B One Step application wasn't meant to supplement the decision on the Citizen's Petition.

Transcriptions Plus II, Inc.

Proceedings                                          30

THE COURT:  No, I know it wasn't -- I know.

MR. LANDAU:  The question was whether the data that was submitted by Teva in support of the One Step application, whether that same type of data was needed (indiscernible) --

THE COURT:  So if I hadn't --

MR. LANDAU:  -- support the Citizen's Petition.

THE COURT:  If I had heard this motion six months earlier, what would you have told me about the -- you would have said, Judge, there's this Plan B One Step that's going to take care of the whole problem; right?

MR. LANDAU:  What I would have said --

THE COURT:  You may have even said it.  I haven't gone over it because the issue is moot.  I haven't reread your papers but you may have actually said it in your papers.

MR. LANDAU:  What I would have said is that the FDA's reconsidering this overarching question, is there enough data and the FDA's determined that the best way to do that is to look at the data that's been submitted in connection with the One Step application.

THE COURT:  I agree with that.

MR. LANDAU:  And it was doing that.

THE COURT:  I agree with that.  That's exactly what I think should be done.  Exactly that.

Proceedings                                    31

MR. LANDAU:  And that's what the FDA has done.

THE COURT:  Well, I understand.  The FDA reached one conclusion and the Secretary reached another and it's the Secretary's determination that's really -- you can't ignore what happened here.

MR. LANDAU:  Well what the FDA did is it looked at the Plan B One Step application and said this data is necessary to support the approval. The same type of data with respect specifically to Plan B is necessary to support that approval.

THE COURT:  Well --

MR. LANDAU:  And because that data hasn't been submitted --

THE COURT:  Well you say that but I don't know that the Plan B they submitted with respect to Plan B One is somehow inadequate with respect to Plan B.  You keep saying that because, you know -- just because you say it doesn't make it so.

MR. LANDAU:  That's the FDA's --

THE COURT:  I mean, you know, it's the FDA's position.

MR. LANDAU:  -- position --

THE COURT:  That that doesn't necessarily make it so.

MR. LANDAU:  And, your Honor, I think it --

Transcriptions Plus II, Inc.

Proceedings                                          32

THE COURT:  That's why there are appeals from administrative agencies to courts.

MR. LANDAU:  I do think it bears noting, your Honor, that soon after the March 2009 order was issued, the FDA opened up the Citizen's Petition docket to allow the plaintiffs or the petitioners or Watson or anybody else to submit additional data in support of the plan data.

THE COURT:  That's not an excuse for waiting for two and a half years to decide it though.

MR. LANDAU:  Well --

THE COURT:  You could have said you haven't submitted anything new in six months, goodbye.

MR. LANDAU:  Well the FDA --

THE COURT:  And then there would have been an argument that we're not Bush.  And we've made the decision in good faith.

MR. LANDAU:  Well, Judge, I think --

THE COURT:  But you didn't do that.

MR. LANDAU:  I think there needs to be a distinction.  The FDA's been considering the question that the Judge asked -- that you asked to reconsider since the order was issued.

THE COURT:  I understand that.

MR. LANDAU:  And you can complete that

Proceedings                                          33

reconsideration (indiscernible).

THE COURT:  But they filed a motion to hold you in contempt a year ago.

MR. LANDAU:  But the process --

THE COURT:  And you said that it wasn't necessary to consider it.  Look, this is all -- this argument is pointless at this moment.  So what I think you should do is to file whatever has to be filed to reopen this proceeding and ask me for whatever relief you want and you could even ask for injunctive relief quickly.

MS. NOVAK:  Yes.

THE COURT:  You know, for a TRO -- for temporary injunction.

MS. NOVAK:  I will take that into account, your Honor.  Thank you very much.  If I can -- sorry.  If I can, your Honor, I would just like to respond because I think it's going to go to the heart of whether if the FDA took proper steps, that just like your Honor said, the FDA has said they took proper steps here by waiting for several years for new data to come in.  All we asked was to have them look at our Citizen's Petition and say either you need more data or you don't.  It is completely unreasonable and their position actually is nonsensical about why they would wait for a couple of years to get

Transcriptions Plus II, Inc.

Proceedings                                              34

data on another drug and then say to us, well this data doesn't apply to yours.  I mean, why would you do that?  And I disagree --

THE COURT:  My guess is that if the Secretary hadn't intervened, they would have granted your petition as well.

MS. NOVAK:  No, I don't think so.

THE COURT:  Well --

MS. NOVAK:  Because from their papers, you know, your Honor asked us several questions in the course of this briefing and, you know, we said that ruling on Plan B One Step was not a sufficient substitute for ruling on the Citizen's Petition and your Honor asked good questions, why.  What benefit do you gain?  And we gave several reasons; one of them, the most important being about broad access.  Our Citizen's Petition had to do with both brand names and generics.  And we knew what would happen here.  In fact, we foreshadowed two things that actually happened.  We said that by asking for more data, the FDA is going to determine that that data is necessary.  And by asking for more data before determining whether it's actually needed is the backwards way of looking at it.

Once it determines that it's necessary, it would then force us to submit more data, even if it

Transcriptions Plus II, Inc.

Proceedings                              35

wasn't necessary and --

THE COURT: I understand.

MS. NOVAK: -- it would grant exclusivity to that brand name for three years. That's, I believe, was part of the reason probably that the brand name product was willing to even jump through these hoops, the different hoops that the FDA keeps putting up.

But it's -- the FDA's arguing out of both sides of their mouth, that these are inextricably tied and that you need more data and that somehow this is going to show you need more data for Plan B One Step, that you need it for Plan B, when this court found several years go that even requiring more data was a significant departure from extrapolating data from adult populations that they had often done.

So all they needed to do was to back and follow this court's order and they refused to do so. And this is their way of having cover. The FDA is saying now oh, well it was a ruling on Plan B One Step and from that ruling, we determined that the Citizen's Petition should be denied. And then they're saying that these two document aren't inextricably tied. It just makes no sense.

This was just their way of setting it up so that they could then deny the Citizen's Petition without

Proceedings                                    36

really complying with this court's order and go back and revisiting why in the first place this drug was being held to a different standard than other drugs that seek an OTC switch.

MR. LANDAU: Judge, if I may briefly respond. I think conspiracy theories can abound but there's absolutely no evidence to support plaintiff's argument here. The fact of the matter is that the data that was --

THE COURT: What do they say, not everyone who suffers from paranoia is crazy.

MR. LANDAU: The fact of the matter is that FDA reasonably determined that the data submitted in support of Plan B One Step can be used to support approval of Plan B One Step but that that data could not be transferred over to the Citizen Petition. And it's important to bear in mind that --

THE COURT: They actually said that?

MR. LANDAU: These are two different drugs.

THE COURT: I mean, they actually said that?

MR. LANDAU: That's been the position that FDA's been taking.

THE COURT: No, no, I mean did they actually say that?

MR. LANDAU: Well that's the position that the

Transcriptions Plus II, Inc.

Proceedings                                     37

FDA's been taking.

THE COURT:  The litigating position.

MR. LANDAU:  That's the litigation position; correct.

THE COURT:  Yes.

MR. LANDAU:  It's important to note that these are different drugs.  So in particular, with respect to the exclusivity issue --

THE COURT:  It's like telling me that aspirin is different.  If I take a -- let's call it children's dose or I take an adult tablet, that they're different.  They're different because of the strength.  And they're -- you know, the total strength is the same here.  It's just a question of how you divide it up.

MR. LANDAU:  Judge, it's important to note that if Plan B One Step had been granted approval and exclusivity, that would not foreclose the makers of Plan B from going and seeking approval and having the right to submit additional data to support --

THE COURT:  The makers of Plan B, other than the generic are the makers of Plan B One.

MR. LANDAU:  But the --

THE CLERK:  And they're not interested in getting approval for Plan B.  They're interested in Plan B One because they get exclusivity for three years.

Proceedings                                          38

MR. LANDAU:  Well the makers --

THE COURT:  I mean this is all an economic decision.

MR. LANDAU:  But the granting exclusivity of Plan B One Step would not foreclose the makers of Plan B --

THE COURT:  No, but her argument is you didn't say to her we want more, give us more data.  That's what your adversary is saying here.

MS. NOVAK:  Well I should --

THE COURT:  I'm terrible at remembering names, forgive me.

MS. NOVAK:  -- we wait three years for you to tell us we need more data?  All you needed to do, the file is complete.  Scientific studies had been completed and reviewed and then they were just overruled and infiltrated with politics last time.

All the FDA needed to do was go back and look at that file again.  That's what we said over and over in our papers.  Just look back and say do you need more data or do you not.  But they knew that they wouldn't be able to in good faith say that we need more data when that's not how they've held -- a standard they've held any other drugs to.  So they created this whole chain of events that okay, we're going to consider Plan B One Step but

Proceedings                                    39

then we're going to say it doesn't apply but then we're going to say if the data was necessary for that, then it's not necessary for Plan B.  I mean it's mental gymnastics.  I give them credit for it.  But it doesn't change the fact that this is being held to a completely different standard and you know, holding women's reproductive health hostage to the politics.

THE COURT:  Make whatever --

MS. NOVAK:  We will, your Honor.  Thank you.

THE COURT:  -- motion.  In the meantime, I'm going to deny the motion for contempt on the ground that it's moot.  And is the case closed?

THE CLERK:  Yes, Judge.

THE COURT:  So we'll reopen it.

MS. NOVAK:  Thank you, your Honor.

THE COURT:  I don't know whether we have to reopen it or whether you start a new case.

MS. NOVAK:  I think that we would move to reopen it.

THE COURT:  Okay.

THE CLERK:  (Indiscernible).

THE COURT:  This is my case manager.  That way we could -- I don't have to carry a case from '05 on my list that I report to the AO.

MS. NOVAK:  I know how that is. I know those

Transcriptions Plus II, Inc.

Proceedings                                                    40

considerations.

THE COURT:  And when you respond, I would like that affidavit if, in fact, this is all a secret to begin with.  I don't know what the great secret is, I don't know.  I mean it's not like they're giving away the contents of a -- well, even the contents of a pill can be deconstructed.  That's why --

MS. NOVAK:  Your Honor, if I may, I'd also like to make a motion to add Secretary Sebelius as a defendant.

THE COURT:  Yes.  And well, you could -- it might be simpler if you in your papers --

MS. NOVAK:  I guess you want us to file a new case.

THE COURT:  Well I'll give it a new docket number.

MS. NOVAK:  Okay.

THE COURT:  But you can bring the caption up-to-date.

MS. NOVAK:  Okay.

THE COURT:  It's no longer Tummino and yes, you should add her as a defendant.

MS. NOVAK:  Thank you.

THE COURT:  I am not familiar with how this works because technically, as I understand it, the FDA

Transcriptions Plus II, Inc.

Proceedings                        41

complied with her order.  So it's still an FDA order.
It's still an administrative agency decision, albeit made
at the direction of the Secretary.  So I don't know the
answer is the short answer.  Make whoever you want as
defendants.

MS. NOVAK:  Okay.  Thank you.

THE COURT:  Okay?

MR. LANDAU:  Thank you, Judge.

THE CLERK:  Thank you, counsel.

(Matter concluded)

-o0o-

Transcriptions Plus II, Inc.

42

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **15th** day of **December**, 2011.

Linda Ferrara
Linda Ferrara
Transcription Plus II, Inc.